**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-MJ-108-FHM |
| | ) | |
| DANIEL RAY HARDY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court for determination as to the mental competency of

Defendant Daniel Ray Hardy ("Hardy") to stand trial.  This issue was raised by defense

counsel at Hardy's Initial Appearance on September 10, 2007 [Dkt. # 5] and in a formal

request for psychiatric evaluation two days later [Dkt. # 7].  After several evaluations

[Dkt. ## 11, 17, 22 & 31], an evidentiary hearing was conducted on September 9, 2008,

with Hardy present [Dkt. # 30].  Based on my review of the mental evaluations, my

observations of Hardy at his Initial Appearance and my observations and questioning of

him at the competency hearing, I conclude that Hardy is **NOT COMPETENT** to

understand the nature and consequences of the proceedings against him or to assist

properly in his defense.  Because I find that the psychologists at the Springfield, MO,

medical facility assessed Hardy's competency under an incorrect legal standard, the

Defendant is **ORDERED** returned to the custody of the Attorney General for a proper

evaluation as outlined below.

# I
## *Background*

On September 7, 2007, the United States filed a Complaint against Hardy alleging

that Hardy had violated 18 U.S.C. § 2250, by failing to register and update his

registration as a sex offender.[1]  This statute provides in relevant part:

> § 2250. Failure to register
> (a) In general.--Whoever--
> (1) is required to register under the Sex Offender Registration and
> Notification Act;
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender
> Registration and Notification Act by reason of a conviction under Federal
> law (including the Uniform Code of Military Justice), the law of the
> District of Columbia, Indian tribal law, or the law of any territory or
> possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides
> in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the
> Sex Offender Registration and Notification Act;
> shall be fined under this title or imprisoned not more than 10 years, or
> both.

Hardy was arrested and appeared before the undersigned for Initial Appearance

on September 10, 2007.  At that time, Public Defender John Butcher raised concerns

about Hardy's competency and thereafter filed a formal Motion to Determine

Competency Pursuant to 18 U.S.C. § 4241 [Dkt. # 7].

Following a hearing on Defendant's competency motion, the Court found

reasonable cause to believe that Hardy was suffering from a mental disease or defect

rendering him mentally incompetent to proceed.  This conclusion was based in part of

counsel's representations as well as the Court's own observations of Hardy's "confused

---

[1]     The Affidavit in support of the Complaint stated that in 1996 in Sioux City, Iowa,
Hardy had been charged with Felony Assault to Commit Sexual Abuse.  He pleaded
guilty on June 25, 1997, served a term of incarceration and thereafter was released from
custody in August 1998.  Hardy was notified of his registration obligation.  (Affidavit of
William A. Kinnebrew, attached to the Complaint, Dkt. # 1).

and rambling" responses to its questions.  [Dkt. # 9].  Accordingly, Hardy was remanded

to the custody of the U.S. Attorney General for mental evaluation.

Hardy was transferred to the Federal Correctional Institution in Fort Worth,

Texas.  On November 1, 2007, psychologists at the Forth Worth institution submitted a

Psychological Evaluation ("the Report") that concluded Hardy was incompetent to stand

trial.  The Report stated that Hardy suffers from low cognitive function.  [Dkt. # 11]. He

tested at the Kindergarten level in reading and spelling and first grade level in arithmetic.

Hardy is also illiterate. *Id.*  The Report further noted a history of head trauma and some

substance abuse.  *Id.*  Hardy also has a significant history of psychiatric treatment for

undetermined psychosis.  The Report concluded that Hardy suffers from intellectual

deficits "which appear to be negatively influencing his ability to adequately understand

the nature and consequences of the proceedings against him and to assist in his defense."

*Id.*  The Report further stated that "it is possible that with some repeated training, he can

be educated regarding his case and legal material.  It is recommended that Mr. Hardy be

ordered to undergo a period of Competency Restoration under Title 18, United States

Code, Section 4241(d)."  *Id.* at 11-12.[2]

Based on the Report, the Court ordered Hardy committed to the custody of the

Attorney General for treatment to determine if Hardy could be restored to competency.

[Dkt. #15].

The Court received a letter from Warden Marty C. Anderson at the U.S. Medical

Center for Federal Prisoners in Springfield, MO, dated March 7, 2008.  [Dkt. # 17].  The

---

[2]        The appropriate question under § 4241(d)(1) is "whether there is a *substantial probability* that in the *foreseeable future* [defendant] will attain the capacity to permit the proceedings to go forward."  (emphasis added).

letter stated that upon placement at the Springfield facility Hardy was uncooperative, refusing to leave his room to participate in clinical interviews.  Hardy's conduct suggested he was experiencing auditory hallucinations.  Hardy refused consent to psychiatric medication; consequently, an internal administrative hearing was conducted to determine if Hardy met the criteria for involuntary administration of anti-psychotic medication.  The hearing officer conclude that Hardy met the criteria and thereafter he was administered Haldol, which improved his behavior.  Hardy became less socially withdrawn.  He was diagnosed with psychotic disorder not otherwise specified and cognitive disorder.  Treating psychologist reported that Hardy remained incompetent to proceed but believed it was "substantially likely" he could be restored to competency.  *Id.*

The Court received a Forensic Report ("the Springfield Report" or "Report") from the psychologists at the Springfield Center dated July 23, 2008.  [Dkt. # 22].  Attached to the Springfield Report was a letter from Warden Anderson stating that "[i]n the opinion of our clinical staff, [Hardy] is mentally competent to stand trial at this time."  *Id*. Also attached to the Report was a Certificate of Competency stating that Hardy "is able to understand the nature and consequences of the proceedings against him and to assist properly in the defense of the claims brought against him."  *Id.*  Among other things, the Springfield Report noted the following:

Hardy had been enrolled in special education classes as a student;

Hardy suffered several traumatic head injuries, the first when he was reportedly struck by a truck and was hospitalized for as much as four months;

Hardy reported psychiatric problems dating back to this first head injury;

Hardy was found to be mildly mentally retarded;

Hardy had "significant deficits in the areas of attention, concentration, orientation, motivation, and abstract reasoning";

Hardy was administered the Competence Assessment for Standing Trial for Defendants with Mental Retardation ("CAST-MR").  Hardy tested as incompetent on two of the three parts of this test.

The Springfield Report contained the following conclusions as to Hardy's

competency to stand trial:

It is the opinion of Dr. Denney and Ms. Tyner that [Hardy's] cognitive deficits (particularly in the areas of learning, memory, reasoning and problem solving) would likely have a "meaningful impact on his ability to deal effectively with his legal case.
. . .
After reviewing the available records, completing competency-related testing, and conducting clinical interviews, we are of the opinion that Mr. Hardy is competent to enter his expressed plea of guilty and complete the subsequent proceedings with the assistance of counsel.  He understands that pleading guilty means admitting he engaged in the alleged criminal behavior.  He further understands he is giving up his right to trial and will be sentenced.  However, it is our opinion he has mental defects that would significantly impair his ability to adequately attend to the details of a trial.

(Springfield Report, Dkt. # 22 at 13).

Thereafter, Hardy requested an opportunity for his own expert to examine him

and conduct testing.  [Dkt. # 25].  Hardy's motion was granted and on September 9,

2008, the Court received a Psychological Evaluation of Hardy by psychologist Curtis T.

Grundy ("the Grundy Report," Dkt. # 31).  Grundy reviewed the previous reports and test

data and conducted additional testing.  He concluded that Hardy:

remains incompetent to stand trial secondary to the presence of Mild Mental Retardation.  He has a chronic psychotic disorder as well as other cognitive limitations that are present.  Due to his significant limitations, he does not appear capable of being restored to competency within the foreseeable future.

*Id.* at 12.

On September 9, 2008, the Court conducted an evidentiary hearing on Hardy's competency. The government rested on the July 2008 Springfield Report [Dkt. # 22] and urged the Court to find Hardy competent to stand trial. Hardy rested on the Grundy Report [Dkt. # 31]. Neither side introduced additional evidence.

The Court then had Hardy sworn as a witness and, outside the presence of counsel for the government, asked Hardy a series of questions to better ascertain his understanding of the court proceedings and the world around him. Hardy's responses to the Court's questions revealed serious cognitive deficits. For example, Hardy could not accurately tell the current day of the week, month or year. He knew his age was "34 or 35" and he knew his birth date – November 30, 1972 – but he could not add his age to his birth year to determine the current year. Hardy's responses also reflected little meaningful understanding of the legal proceedings he is presently involved in or those he could face if found competent. He stated that the role of a jury is "to say you're guilty." He did not know how many persons were on a jury, but believed it only took one juror to determine a defendant was guilty. Hardy knew he was in Tulsa, Oklahoma, but did not know what town he had been in the night before. He had seen trials on television. He also watched football on television. He said he had seen "the Cowboys" play but did not know what city the Cowboys were from. He did not know who was president of the United States, although he remembered "George Bush" and "Clinton."

**II**
*Discussion*

**A.      Authority of Magistrate Judge to Determine Competency**

As a preliminary matter, the Court addresses a Magistrate Judge's authority to render a competency determination. It does not appear that the Tenth Circuit Court of

6

Appeals has expressly ruled on this question.  Some courts have found that the competency determination is implicitly within the authority of a Magistrate Judge because 18 U.S.C. § 4241(a) permits a motion to determine mental competency of the defendant to stand trial to be filed by the government or the defendant *after the defendant is arrested or charged* and before the imposition of sentence.  *See* S.Rep. No. 225, 98th Cong., 2d Sess. 233 (emphasis added).  "Since a Magistrate Judge is generally the only judicial officer who exercises jurisdiction over a criminal defendant between the time of arrest and the time of indictment, the contention that such a ruling is beyond the jurisdiction of a Magistrate Judge appears contrary to the intent of the statute."  *U.S. v. Hemmings*, 1991 WL 79586 at *4 (D.D.C. May 2, 1991).  In *U.S. v. Hamilton*, 107 F.3d 499, 502-03 (7th Cir. 1997), the Court discussed without comment a Magistrate Judge's findings as to a defendant's competency to stand trial.  *See also U.S. v. Archuleta*, 218 Fed. Appx. 754, 755 (10th Cir. 2007) (noting that a Magistrate Judge made competency determination).  In other courts, however, a Magistrate Judge's competency determination has been prepared as a Report and Recommendation to the District Court.  *E.g.*, *U.S. v. Horne*, 955 F.Supp. 1141 (D.Minn. 1997).  However, the practice in this Court has been for Magistrate Judges to conduct competency hearings and make their determinations by Order rather than Report and Recommendation.  There is legal support for this procedure and I will follow this practice.

**B.      Constitutionality of Sex Offender Registration and Notification Act.**

Defendant has not raised a constitutional challenge to the criminal statute at issue based on the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, or the "Necessary and Proper" clause, U.S. Const. art. I, § 8, cl. 18; nevertheless, because the Court is aware

that these are sources of ongoing debate, a brief overview of the constitutional issues is appropriate.

Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 "to protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." *U.S. v. Van Buren, Jr.*, 2008 WL 3414012 at *1 (N.D.N.Y. Aug. 8, 2008) (quoting Pub.L. No. 109-248, 120 Stat. 587 (July 27, 2006)). Title I of that Act codifies the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16911 *et seq.* SORNA is intended to protect the public from sex offenders and offenders against children by establishing "a comprehensive national system" for registration of sex offenders. *U.S. v. Zuniga*, 2008 WL 2184118 at *5 (D.Neb. May 23, 2008) (quoting 42 U.S.C. §16901). 18 U.S.C. § 2250(a) – the statute Hardy is alleged to have violated – is the criminal statute enforcing SORNA.

Many courts have examined whether SORNA is a lawful expression of Congress' power under the Commerce Clause. In *Van Buren*, the court noted:

> To date, over 75 federal courts have addressed the constitutionality of SORNA, and a majority of these cases have addressed Congress's authority to enact the statute under the Commerce Clause. All but two, *United States v. Waybright*, --F.Supp.2d--, 2008 WL 2380946 (D.Mont. June 11, 2008) and *United States v. Powers*, 544 F.Supp.2d 1331 (M.D.Fla. 2008), have found SORNA to be constitutionally enacted.

*Van* Buren,2008 WL 3414012 at *11.

Some courts have addressed SORNA's constitutionality under the "Necessary and Proper" clause. At least one federal district court has found SORNA unconstitutional on this basis. *U.S. v. Tom*, 558 F.Supp.2d 931, 938-41 (D.Minn. 2008).

Among the federal district courts that have found SORNA constitutional are two in this state: *U.S. v. Cochran*, 2008 WL 2185427 (E.D.Okla. May 23, 2008) (rejecting challenges to SORNA on the following grounds: Ex Post Facto and due process clauses, non-delegation doctrine, Administrative Procedures Act, and Tenth Amendment); *.U.S. v. Dowell*, 2007 WL 5361304 (W.D.Okla. Dec. 5, 2007) (rejecting challenges on the following grounds: double jeopardy, Ex Post Facto and Commerce clauses, due process, equal protection and cruel and unusual punishment). While this Court is not bound by the decisions of its sister districts, the Court gives great consideration to the decisions of those Courts on the same or similar issues before it.

From an extensive review of the cases, it is clear that the majority view is that SORNA is not unconstitutional on the grounds listed above. Since the Defendant has not raised any specific constitutional challenge to SORNA, the Court has no reason to deviate from the majority view.

**C.     Applicable Legal Standard.**

Federal law provides that if there is reasonable cause to believe a defendant may be incompetent to stand trial the Court shall conduct a hearing to determine the issue. 18 U.S.C. § 4241. The statute further provides:

> (d) Determination and disposition.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the

foreseeable future he will attain the capacity to permit the proceedings to
go forward; and

(2) for an additional reasonable period of time until--

(A) his mental condition is so improved that trial may proceed, if the court
finds that there is a substantial probability that within such additional
period of time he will attain the capacity to permit the proceedings to go
forward; or

(B) the pending charges against him are disposed of according to law;
whichever is earlier.

If, at the end of the time period specified, it is determined that the
defendant's mental condition has not so improved as to permit proceedings
to go forward, the defendant is subject to the provisions of sections 4246
and 4248.

The Supreme Court has set out the test for competency in *Dusky v. United States*,

362 U.S. 402 (1960) (per curiam):

[I]t is not enough for the district judge to find that "the defendant (is)
oriented to time and place and (has) some recollection of events," but that
the "test must be whether he has sufficient present ability to consult with
his lawyer with a reasonable degree of rational understanding-and whether
he has a rational as well as factual understanding of the proceedings
against him."

*Id.* at 402.

The "touchstone" for determining if a defendant has a rational understanding of

the proceedings against him is whether he has "sufficient contact with reality." *Lafferty*

*v. Cook*, 949 F.2d 1546, 1551 (10th Cir. 1992). The "critical inquiry is whether the

defendant's mental condition, however it may be labeled and whatever symptoms it may

produce, prevents the defendant from having a rational or factual understanding of the

proceedings against him or significantly prevents the defendant from consulting with his

lawyer." *Id.* at 1551 n.3.

To raise an issue requiring a competency hearing "there must be some evidence to create doubt on the issue." *U.S. v. Crews*, 781 F.2d 826, 833 (10th Cir. 1986). Regardless of who raises the issue of competency, the government has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to proceed. *U.S. v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *U.S. v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987); *U.S. v. Couch*, 12 F.3d 207, 1993 WL 529723 at *1 (5th Cir. 1993).   The defendant has no burden to establish his incompetency. *U.S. v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

**D.      The Court's Determination**

The Court has reviewed Hardy's three psychiatric evaluations and the letter from Warden Anderson after Hardy was involuntarily administered anti-psychotic medication at the Springfield Medical Center.  The Court observed Hardy at his Initial Appearance and again one year later at his competency hearing.  The Court has also engaged in extensive questioning of Hardy.

The Government relies on the July 2008 Springfield Report to establish Hardy's competence; however, the Court finds this report unpersuasive because it is internally inconsistent and appears to be based on an incorrect legal standard.  It appears that the Springfield Medical Center psychologists applied the wrong test in concluding Hardy was competent to proceed to trial.  The Report states that in the opinion of the psychologists Hardy is "competent to enter his expressed guilty plea and complete the subsequent proceedings with the assistance of defense counsel."  [Dkt. # 22 at 13].  But this is not the legal test of competency set forth in the statute.  The test is whether Hardy can understand the proceedings and assist in his defense.  The Report appears to concede

that Hardy could not meet this test:  "[I]t is our opinion he has mental defects that would

significantly impair his ability to adequately attend to the details of a trial."  *Id.*  The

Court interprets these opinions to be inconsistent.  Hardy cannot be "competent" to plead

guilty if he is not competent to appreciate the details of a trial:  He cannot competently

plead guilty, thereby waiving rights that he does not appreciate.  Nowhere do the

Springfield psychologists conclude – under the proper statutory test – that Hardy is

competent to stand trial.  Thus, the Certificate of Competency signed by Warden

Anderson and the statements as to Hardy's competence contained in Anderson's letter to

the Court are contrary to the conclusions set forth in the Springfield Report.

By a preponderance of the evidence the Court concludes as follows:

**(1) Hardy's mental level.**

Hardy is mildly mentally retarded.  He is illiterate and has the functional level of a

Kindergartener or First Grader with respect to reading, spelling and mathematics.  Other

than information gleaned from television shows, he has little fundamental understanding

of legal processes.  He has only a rudimentary understanding of what a trial is and little

comprehension of the roles of judge, jury and counsel.

**(2) Hardy's mental health**.

Hardy has suffered several instances of traumatic head injury that appears to have

contributed to his mental health situation.  He was struck by a truck and found

unconscious in the road on one occasion and was the victim of an assault on another

occasion.  He has been hospitalized for at least one of these injuries.  In addition, Hardy

suffers from psychotic disorder.  On occasion he seems to have experienced auditory

hallucinations.  His personal hygiene frequently suffers as a result of his inability to attend to his personal needs.

**(3) Hardy's ability to understand the legal proceedings against him.**

Hardy has a very rudimentary knowledge of legal proceedings.  Most of his knowledge comes either from television programming or from education he received while a patient at the Springfield facility.  He is uncertain of the roles of the various "actors" at trial or how a trial is conducted.  For example, he believes it would take only one juror to convict him at trial.  At the competency hearing, Hardy demonstrated poor understanding of even where he is physically located.

**(4) Hardy's ability to assist in his defense.**

Hardy has little memory of events related to this case.  He often cannot remember where he was one day or one week earlier.  His cognitive defects render him unable to recall and process information necessary to any future legal proceeding.  He is illiterate and, thus, incapable of reviewing written material or communicating with counsel through written word.  These conditions render Hardy unable to assist counsel in his defense.

**(5) Hardy's Restoration to Competency.**

The psychologists' Report from FCI Fort Worth suggested it was possible for Hardy to be "educated" regarding his case and legal material.  [Dkt. # 11 at 12].  That Report suggested Hardy undergo a period of Competency Restoration.  *Id.*  After treating Hardy with involuntary administration of anti-psychotic medication, the Springfield psychologists stated it was "substantially likely" that Hardy could be restored to competence.  [Dkt. # 17].  Thereafter, the Springfield psychologists reported that Hardy

had been restored to competence – however, Hardy's competence was not gauged by the correct legal standard.  [Dkt. # 22].  The Court finds by a preponderance of the evidence that Hardy has not attained competency to proceed to trial.  After more than a year of evaluation and treatment, Hardy remains incompetent to stand trial.

The evidence as to whether Hardy can be restored to competency is in conflict. Psychologists at the Fort Worth facility and the Springfield facility have indicated they believe Hardy can be restored to competency; however, the Court has concluded that efforts in this regard have failed thus far.  Psychologist Grundy opines that Hardy does not appear capable of regaining competency in the foreseeable future.  Hardy has been evaluated by mental health professionals for more than one year.  While professionals at the Springfield facility, indicated they believed Hardy had been restored to competency, the Court finds that the wrong test for competency was applied.  Furthermore, the Court has seen Hardy first-hand and based on its review of the records and Hardy's conduct, I have concluded that he is not competent to proceed at this time.  The key question now is whether Hardy can be restored to competency – applying the correct legal standard.

**IT IS THEREFORE ORDERED** that the Defendant, Daniel Ray Hardy, be committed to the custody of the Attorney General for a period not to exceed four (4) months, as is necessary for determination of whether there is a substantial probability that in the foreseeable future Hardy can be restored to legal competency – **under the correct legal standard**.  The standard to be applied is whether Hardy can be made competent to "understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241.

**IT IS FURTHER ORDERED** that if medical professionals conclude that Hardy *can* be restored to competency, treatment begin immediately to accomplish that task and the Court be so advised as outlined below.  If, however, it is determined that Hardy *cannot* be restored to competency, it shall be further determined:

(1) whether Hardy is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and if applicable, whether suitable arrangements for state custody and care are available, 18 U.S.C. § 4246(a), and

(2) whether Hardy is a sexually dangerous person, 18 U.S.C. § 4248(a).

**IT IS FURTHER ORDERED** that this matter shall be set for review on **February 23, 2009.**  The evaluations described above and any treatment shall be performed in the closest facility suitable to the Court, unless impracticable.  The director of said facility shall cause a report to be prepared, pursuant to 18 U.S.C. § 4247(c)(4)(C), and provide copies of the report to the clerk of this Court and to the attorneys for defendant and the government prior to the review date.

IT IS SO ORDERED this 22nd day of October 2008.

Paul J. Cleary
United States Magistrate Judge